**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEBRASKA**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | **8:07CR83** |
| vs. ) | |
| ) | **REPORT AND** |
| **MARK ALAN MEHNER,** ) | **RECOMMENDATION** |
| ) | |
| **Defendant.** ) | |

Oral argument was held January 30, 2008 on the defendant's Motion for Severance [23] and Motion to Dismiss Count I [25]. Exhibits 101 through 110 were received in evidence for purposes of deciding these motions only. The hearing transcript was filed on February 6, 2008, at which time both motions were deemed submitted.

On February 22, 2007, the defendant ("Mehner") was indicted in this court on charges of wire fraud (Count I) committed against Zion Lutheran Church beginning September 27, 2004; bank fraud (Count II) committed between September 7 and November 30, 2005 against Wells Fargo Bank in the amount of $155,440; wire fraud (Count III) committed against CBS Home Mortgage Company and Wells Fargo Bank between August 1 and November 3, 2005; and bank fraud (Count IV) committed against Wells Fargo Bank between August 18 and August 31, 2006.

On April 6, 2007, Mehner was charged by information in the District Court of Douglas County, Nebraska with felony theft by deception based on allegations that he

obtained property valued over $1,500.00 from Zion Lutheran Church on or about October 27, 2004.

In these motions, Mehner contends that Count I of the federal indictment is improperly joined with Counts II-IV and should be severed pursuant to Fed. R. Crim. P. 8(a) and/or 14. He further contends that Count I should be dismissed, asserting that it is identical to the state charge "except for the federal jurisdictional allegation relating to use of the wire." Thus, he maintains the government has violated its "*Petite*[1] Policy," he is the victim of selective prosecution, and the prosecution of Count I is a *de facto* second prosecution and violates the Double Jeopardy Clause of the U.S. Constitution.

## FACTUAL BACKGROUND

### I. Federal Charges

By agreement of the parties, the court adopts the factual background for the pending federal charges as set out in the Government's brief, i.e., Exhibit 102, as amended by Filing No. 36.

### A. Count I - Wire Fraud, Zion Lutheran Church

On October 10, 2004, Mark Mehner (hereafter MM) was the President of the Zion Lutheran Church. Mehner told the Assembly he had been contacted by a member of the

---

[1] The "*Petite*" policy, *see Petite v. United States*, 361 U.S. 529, 531(1960), is an internal policy of the Department of Justice to the effect that a federal prosecution should not be based on substantially the same acts as were the basis for a prior state prosecution unless there is a compelling federal interest. *United States v. Larsen*, 427 F.3d 1091, 1094 (8th Cir. 2005) (citing *Thompson v. United States*, 444 U.S. 248, 248-49 n.1 (1980)).

congregation who wished to remain anonymous, who was willing to donate to the church 90 acres of raw land, or its value, which he represented to be $1-2 million.  Mehner said the donor had asked Mehner to represent Zion in the transaction. Mehner told the congregation/board that the donor needed $250,000 to recover his costs of acquiring the property, and that there would be additional sale-related fees of approximately $10,000 to $25,000.  Mehner stated he signed a nondisclosure agreement with the donor to keep the donor's identity secret.  As President, Mehner was then authorized by the Assembly to handle the matter.

In a series of e-mails to church personnel, Mehner broke down the "donation" plan.

On October 27, 2004, the church took out a 60-day loan with the Bank of Bennington in the amount of $250,000.  Mehner was then presented a Bank of Bennington cashier's check, which he had told them to make out to the donor's "VLN Family Trust" for $250,000.  The "VLN Family Trust" account was created a day earlier, on October 26, 2004.  At the behest of Mehner, his former employee Amy Mason opened the VLN Family Trust account at the Omaha State Bank, with a $100.00 deposit.  On October 27, 2004, at 1:10 p.m., the cashier's check from the church was deposited into this account.

Mason stated she trusted Mehner, so she opened the VLN Family Trust account and maintained the bank account checkbook.  In January of 2006, Mason stated to investigators that she knew Mehner deposited a large check shortly after opening the account.  In a deposition taken May 26, 2006, she stated that she deposited the check.  Over the next 13 months, Mehner would meet her and ask her to write checks to one of his or his wife's three

-3-

companies: Integrated Business Strategies, Innovative Design Solutions (wife), and DMARK. On December 1, 2004, an Integrated Business Strategies check paid for a Cadillac from Lexus, which Mark and Andrea Mehner continued to drive at the time of Indictment herein.

No such land donation to the church has ever been consummated. The government is in receipt of a letter from James F. Cann, an attorney who represented Mehner in a civil suit brought against him by the Zion Lutheran Church, in which Mr. Cann represents that Mehner is the anonymous donor. Mehner's first criminal defense lawyer herein, Anthony Troia, presented to the United States Attorney's office, a deed to land in Arizona that Mehner said is the land he was going to donate to the church. That desert land has been appraised at $43,000.

### B. Count II - Check Kiting/Bank Fraud

In the summer of 2005, Deb Cizek of Ambassador Real Estate had a $1,765,565.63 residential property for sale at 1201 North 138th Circle. Due to past dealings with Mehner, she thought he might be interested in purchasing this property, so she contacted him. They reached an agreement on September 7, 2005, that the Mehners would buy this property, and Mehner signed a purchase agreement as attorney-in-fact for his father. The "Mehner Family Trust" is listed as the purchaser. Closing was supposed to be on November 3, but Mehner did not have the needed $280,045.63 down payment. On November 4, Cizek had Mehner sign a promissory note for $90,000, due on November 11, at which time she loaned him

$90,000 to help with closing. (Mehner obtained the balance of the down payment from other sources.)

On October 3, 2005, Mehner's 81-year-old father, Raymond Mehner, signed documentation creating the Mehner Family Living Trust, with himself as trustee. On November 3, 2005, in Sioux City Iowa, Mehner accompanied his father to open a Wells Fargo account titled "Mehner Family Trust," with $100.00. Raymond Mehner was the only authorized signer on the account.

By November 16, 2005, the VLN Family Trust account had dwindled to deposits totaling $244.00. On November 16, 2005, at the request of Mehner, Amy Mason wrote check #1031, in the amount of $175,000, to the "Mehner Family Trust" account at Wells Fargo Bank.

The VLN account "deposit" of $175,000.00, made it appear on November 16, that the Wells Fargo "Mehner Family Trust" account had deposits totaling $183,604.73. Off of that amount, also on November 16, in Omaha, "R.H. Mehner/Mark Mehner" wrote 1) a counter check for $90,000 to real estate agent Deb Cizek, and 2) a counter check for a $75,000 down payment to Aslan Development on an option contract for a property he intended to buy (he did not exercise the option within six months, so Aslan kept both the money and the property). Both checks cleared the Wells Fargo account. Mehner presented to Cizek, the kited Wells Fargo check in the amount of $90,000, drawn on the Mehner Family Trust account, made payable to Deb Cizek. Cizek then called her bank, Enterprise Bank, to verify

the $90,000 check was good and would clear. Cizek stated her bank and Wells Fargo Bank told her the check was good and the funds were in the account. Cizek then deposited the check and it cleared.

On November 18, 2005, check #1003 in the amount of $200,000, written on the Mehner Family Trust account, was deposited into the VLN Family Trust account. The check was signed Raymond H. Mehner/Mark Mehner. It made the VLN account appear to have deposits totaling $200,214.00 until November 25. The VLN account was closed on November 30.

On November 21, Omaha State Bank rejected check #1031, in the amount of $175,000, as NSF. The VLN Family Trust account thereafter had deposits totaling $214.00.

On November 21 Wells Fargo Bank rejected check #1003 in the amount of $200,000 as NSF. The "Mehner Family Trust" account thereafter had a negative balance in the amount of $156,440, which is the loss to Wells Fargo. Wells Fargo, via Brian Forkey, contacted RM, and he said he knew nothing of the transaction, and it was all handled by Mehner.

### C. Count III - Wire Fraud, CBS Home Mortgage

Mehner had to secure a mortgage for the balance due on the property at 1201 North 138th Circle. On November 3, 2005, Raymond Mehner and his wife Barbara, with the help of Mehner, closed a conventional mortgage with CBS Home Mortgage. (CBS executed the paperwork locally, but the mortgage was actually with Wells Fargo.) Six documents, which

each depicted inflated or non-existent sources of income and land holdings, were supplied to CBS by FAX from Mehner's home FAX number.

### D.  Count IV - Check Kiting/Bank Fraud

On August 18, 2006, check #1558, written on Andrea Mehner's Innovative Design Solutions account #1158694449 at Wells Fargo, dated April 18, 2006, in the amount of $25,000, signed by Mehner and made payable to and endorsed by Aslan Development, was deposited into an account at Nebraska State Bank.

On August 21, 2006, Mehner is on videotape bringing 2 checks to the Wells Fargo Bank at 4001 North 132nd.  He deposited check #5007, written on DMARK, Inc. account #101737 at the Bank of Nebraska, in the amount of $14,000, payable to Innovative Design's Wells Fargo account.  He also deposited #5008, written on DMARK, Inc. account #101737 at the Bank of Nebraska, in the amount of $13,500, payable to Innovative Design's Wells Fargo account.  Both checks were deposited into account #1158694449 at Wells Fargo.

These latter two checks created an artificial balance in the Wells Fargo account which allowed the original $25,000 check to clear. Checks #5007 and #5008 were returned unpaid by the Bank of Nebraska.

### II.  State Court Proceedings

### A.  Civil Litigation, Zion Lutheran Church

Zion Lutheran Church filed suit against Mehner in the Douglas County District Court. Mehner, proceeding without counsel, was deposed twice by the church's attorneys.  *See*

Exhibits 106 & 107. By order dated August 21, 2006 (Exhibit 108), the state district court granted summary judgment against Mehner and in favor of Zion Lutheran Church on its claims for conversion and fraudulent misrepresentation, based on these findings:

> [I]n September and October of 2004, defendant Mark Mehner ("Mehner") advised and represented to Zion, that he had been contacted by an anonymous donor who wanted to sell land to Zion for $250,000.00, which land Zion would then sell for an amount in excess of $1,000,000.00, resulting in a large donation to Zion. In reliance on these representations, and at the specific instruction of Mehner, On October 27, 2004, Zion obtained a loan from the Bank of Bennington and gave a cashier's check in the amount of $250,000.00 to Mehner, which check was payable to the VLN Family Trust. At various times from and after October, 2004, and at the specific request of Mehner, Zion advanced to Mehner and/or Integrated Business the total sum of $41,515.75 for purported expenses related to the purcahse and sale of the land by Zion.
>
>     Mehner deposited the $250,000.00 given to him by Zion into account number 100713959 at the Omaha State Bank, Omaha, Nebraska. Mehner also deposited $41,515.74 given to him and/or Integrated Business Strategies, Inc. into account number 105700641746 at U.S. Bank, Omaha, Nebraska.
>
>     . . . Mehner converted to his own use the $291,515.74, which is the property of Zion. None of the $291,515.74 was used or spent for the purported purchase and sale of land as misrepresented by Mehner to Zion and none of this money was used for the benefit of Zion.
>
>     . . . Mehner deposited the $250,000.00 check into the Omaha State Bank account set up in the name of a fictitious trust dubbed the VLN Family Trust and thereafter he transferred money to two business entities, Integrated Business Strategies and D Mark, Inc., both controlled by Mehner. [The] evidence also shows approximately 60 ATM withdrawals from various locations totaling approximately $7,800.00 in cash. [O]ver $20,000.00 was paid to Creighton University for Mehner's son....
>
>         . . . .

> Without any doubt whatsoever, the evidence leads to only one conclusion; that being that the defendant fraudulently misrepresented to Zion in October of 2004 that an anonymous donor, for tax purposes, wanted to sell the church a piece of property worth well over $1,000,000.00 for $250,000.00, plus some additional $41,515.74 in expenses. Adding a further layer to this scheme, the defendant Mehner told Zion that the donor must remain anonymous and that as an attorney, Mehner was bound by "ethical considerations" and was unable to reveal the donor, the fictitious purported landowners, identity. These statements were all untrue. Mehner knew they were false. Mehner, for reasons of personal financial gain, made the statements with the intent that Zion rely upon them. These false statements induced Zion to advance $291,515.74 to Mehner beginning in October of 2004, which sum has never been recovered. It is apparent from the evidence that these funds were drained from the Omaha State Bank account and converted to Mehner's own use, these funds having been spent by Mehner.

On August 21, 2006, the district court entered judgment in favor of Zion Lutheran Church in the amount of $291,515.74, plus interest of $33,077.23 incurred on Zion's loan with the Bank of Bennington. The court also awarded Zion its attorney's fees in the total amount of $43,697.07.

Counsel advised during oral argument that an appeal of the civil judgment is pending. (11:5-6).

### B. State Criminal Charges

Exhibit 110 indicates that a criminal complaint was filed February 9, 2007 in the Douglas County Court charging Mehner with theft by deception, after Zion Lutheran Church reported a theft by deception in the amount of $250,000. *See* Exhibits 105 & 110. Apparently, Mehner was arrested on a state warrant on or about February 15, 2007. He waived a preliminary hearing and was bound over to district court on April 4, 2007. On

April 6, 2007, an information was filed in the Douglas County District Court, charging Mehner with felony theft by deception based on allegations that he obtained property valued over $1,500.00 from Zion Lutheran Church on or about October 27, 2004. In Count II of the Information, Mehner is charged with perjury for statements he made during his deposition in the civil proceeding on or about March 9, 2006. These charges remain pending.

## LEGAL ANALYSIS

### A. Dismissal of Count I

Mehner has not been convicted in state court, and I do not believe that the government sought this indictment in violation of its *Petite* policy. In any event, the *Petite* policy "confers no substantive rights on a criminal defendant, *see United States v. Leathers*, 354 F.3d 955, 962 & 962 n.5 (8th Cir. 2004), *cert. denied*, 125 S.Ct. 285 (2004)." *United States v. Larsen*, 427 F.3d at 1094. Thus, Mehner would not be entitled to any relief even if the government had acted contrary to the *Petite* policy.

Mehner's "double jeopardy" argument is also without merit. The United States and the State of Nebraska are separate sovereigns, and a subsequent prosecution by a separate sovereign does not violate the United States Constitution. *See, e.g., United States v. Vinson*, 414 F.3d 924, 928-29 (8th Cir. 2005). Turning to Mehner's unsupported assertion that the federal indictment on Count I is "a sham and cover,"

> while the Supreme Court has suggested that a state prosecution that is merely a "sham and a cover" for a duplicative federal prosecution may be impermissible, *Bartkus v. Illinois*, 359 U.S. 121, 123-24 (1959), this possibility affords no basis for relief in this case. [Defendant] was the subject of a

> subsequent federal, not state, prosecution ... and more importantly, [Defendant] has offered no evidence that the federal prosecution operated as a "sham and a cover" to disguise a second prosecution in which the United States Attorney was a mere "tool" of the State[.]

*Id.* at 929 (citations omitted). *See also United States v. Leathers*, 354 F.3d 955, 959-60 (8th Cir.), *cert. denied*, 543 U.S. 844 (2004).

Finally, in order to prevail on his claim of selective prosecution, Mehner must show "'1) that he has been singled out for prosecution while others similarly situated have not been prosecuted for similar conduct and 2) that the government's action in thus singling him out was based on an impermissible motive such as race, religion, or the exercise of constitutional rights.'" *United States v. Leathers*, 354 F.3d at 963. No such showing has been made.

For all these reasons, I recommend that Mehner's Motion to Dismiss Count I [25] be denied.

### B. Severance of Counts

In this instance, the court must first determine whether joinder of Counts I through IV is proper under Rule 8(a) of the Federal Rules of Criminal Procedure. Even if joinder is proper under Rule 8(a), the court, in its discretion, may sever counts pursuant to Rule 14. The rules are to be liberally construed in favor of joinder. *United States v. Ruiz*, 412 F.3d 871, 886 (8th Cir.), *cert. denied*, 546 U.S. 994 (2005).

Under Fed. R. Crim. P. 8(a), a defendant may be charged in separate counts with two or more offenses if the offenses charges "are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme

or plan."  In applying the "same or similar character" standard, the court permits joinder when the counts refer to the same type of offenses occurring over a relatively short period of time, and the evidence as to each overlaps.  *United States v. Boyd*, 180 F.3d 967, 981 (8th Cir. 1999) (quotations omitted); *United States v. Ruiz*, 412 F.3d at 886.  The Court of Appeals has, however, acknowledged that

> [p]rejudice may result from a possibility that the jury might use evidence of one crime to infer guilt on the other or that the jury might cumulate the evidence to find guilt on all crimes when it would not have found guilt if the crimes were considered separately.  On the other hand, a defendant does not suffer any undue prejudice by a joint trial if the evidence is such that one crime would be probative and admissible at the defendant's separate trial of the other crime.

*United States v. Boyd*, 180 F.3d at 981-82 (quoting *United States v. Davis*, 103 F.3d 660, 676 (8th Cir. 1996), *cert. denied*, 520 U.S. 1258 (1997)); *see also United States v. Little Dog*, 398 F.3d 1032, 1037 (8th Cir. 2005).  "To avoid prejudice, the district court can always grant severance."  *United States v. Little Dog*, 398 F.3d at 1037.

It would appear that the offenses alleged in Counts I through IV are of the same or similar character, considering the continuity and ownership of the bank accounts involved, and the likely admissibility of common evidence to prove intent, knowledge, and absence of mistake.  During oral argument, however, counsel acknowledged that the availability of the large number of documents produced and statements made during the state civil proceeding could result in a succession of "mini-trials" under Rules 401, 403 and 404 of the Federal Rules of Evidence.

The court is persuaded that it would be difficult, if not impossible, to resolve these issues by entering an order in limine or by specially instructing the jury. Finally, the mere fact that Mehner is charged with defrauding a church may operate as a stigma in the jury's mind as to the remaining counts. Therefore, I find that the Motion to Sever should be granted, and that the trial of Count I should be severed from the trial of Counts II through IV pursuant to Fed. R. Crim. P. 14(a).

## RECOMMENDATION

For the reasons discussed above,

**IT IS RECOMMENDED:**

1.that Defendant's Motion to Dismiss Count I [25] be denied, and

2.that Defendant's Motion for Severance [23] be granted, and that Count I be severed from Counts II through IV of the Indictment pursuant to Fed. R. Crim. P. 14(a).

Pursuant to NECrimR 57.3, a party may object to this Report and Recommendation by filing an "Objection to Report and Recommendation" within ten (10) business days after being served with the recommendation. The statement of objection shall specify those portions of the recommendation to which the party objects and the basis of the objection. The objecting party shall file contemporaneously with the statement of objection a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made.

**DATED February 27, 2008.**

BY THE COURT:

s/ F.A. Gossett
United States Magistrate Judge